Opinion for the Court filed by Circuit Judge TATEL.
Concurring opinion filed by Circuit Judge HENDERSON.
Dissenting opinion filed by Circuit Judge KAVANAUGH.
TATEL, Circuit Judge:
A company whose workers recently voted to unionize refuses to bargain with them, claiming that most of those who voted are undocumented aliens. The company argues that undocumented aliens are prohibited from unionizing because they do not qualify as “employees” protected by the National Labor Relations Act. Because the company’s argument ignores both the Act’s plain language and binding Supreme Court precedent, we deny its petition for review.
I.
Petitioner Agri Processor Co. is a wholesaler of kosher meat products based in Brooklyn, New York. In September 2005, the company’s employees voted to join the United Food and Commercial Workers union. When the company refused to bargain, the union filed an unfair labor practice charge with the National Labor Relations Board.
The Board’s General Counsel issued a complaint charging that Agri Processor’s refusal to bargain violated sections 8(a)(1) and 8(a)(5) of the National Labor Relations Act, 29 U.S.C. §§ 151-169, which make it “an unfair labor practice for an employer — (1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in [the Act]; ... [or] (5) to refuse to bargain collectively with the representatives of his employees.” Id. § 158(a)(1), (5). In a hearing before an administrative law judge, the company claimed that after the election it put the Social Security numbers given by all the voting employees into the Social Security Administration’s online database and discovered that most of the numbers were either nonexistent or belonged to other people. Based on this evidence, the com *3 pany alleged that most of the workers who had voted in the election were aliens unauthorized to work in the United States. Arguing that undocumented workers do not count as “employees” protected by the NLRA, the company claimed the election was invalid. The company also asserted that undocumented aliens may not belong to the same bargaining unit as legal workers, rendering improper the bargaining unit created by the Board.
Relying on Supreme Court precedent and the Board’s decision in Concrete Form Walls, Inc., 346 N.L.R.B. No. 80 (Apr. 13, 2006), the ALJ rejected the company’s arguments, sustained the charged violations, and ordered Agri Processor to bargain with the union. Agri Processor Co., 347 N.L.R.B. No. 107, at 3 (Aug. 31, 2006). The Board unanimously adopted the ALJ’s recommendations. Id. at 1. Though one Board member noted that “the average person” might find it peculiar that an employer must bargain with illegal aliens, he acknowledged that the NLRA compelled this result. Id. at 1 n. 2.
The company petitions for review, still arguing that undocumented aliens are not employees under the NLRA and may not belong to the same bargaining unit as legal workers. The Board cross-petitions for enforcement.
II.
According to the Board, Agri Processor’s contention that undocumented aliens are not “employees” protected by the NLRA ignores the Act’s plain language and the Supreme Court’s decision in Sure-Tan, Inc. v. NLRB, 467 U.S. 883,104 S.Ct. 2803, 81 L.Ed.2d 732 (1984). We agree.
The NLRA defines the term “employee” expansively and lists only a few limited exceptions:
The term “employee” shall include any employee ..., but shall not include any individual employed as an agricultural laborer, or in the domestic service of any family or person at his home, or any individual employed by his parent or spouse, or any individual having the status of an independent contractor, or any individual employed as a supervisor, or any individual employed by an employer subject to the Railway Labor Act ..., or by any other person who is not an employer as herein defined.
29 U.S.C. § 152(3). In Sure-Tan, the Supreme Court held that this definition clearly includes undocumented aliens:
The breadth of [the NLRA’s] definition [of “employee”] is striking: the Act squarely applies to “any employee.” The only limitations are specific exemptions for agricultural laborers, domestic workers, individuals employed by their spouses or parents, individuals employed as independent contractors or supervisors, and individuals employed by a person who is not an employer under the NLRA. See 29 U.S.C. § 152(3). Since undocumented aliens are not among the few groups of workers expressly exempted by Congress, they plainly come within the broad statutory definition of “employee. ”
467 U.S. at 891-92,104 S.Ct. 2803 (emphasis added).
Remarkably, Agri Processor’s brief neither acknowledges this controlling language in Sure-Tan nor even quotes the NLRA’s definition of “employee.” Instead, the company focuses exclusively on the Immigration Reform and Control Act of 1986 (IRCA), Pub.L. No. 99-603, 100 Stat. 3359, which made it illegal for companies knowingly to employ undocumented aliens, 8 U.S.C. § 1324a(a)(l), and on Hoffman Plastic Compounds, Inc. v. NLRB, 535 U.S. 137, 122 S.Ct. 1275, 152 L.Ed.2d *4 271 (2002), which held that IRCA bars the Board from awarding backpay to undocumented aliens. Though Agri Processor never articulates this clearly, its argument seems to be that IRCA, passed after Sure-Tan, somehow amended the NLRA to exclude undocumented aliens from its coverage, and that Hoffman Plastic overruled Sure-Tan. In fact, however, neither IRCA nor Hoffman Plastic supports the company’s argument.
To begin with, nothing in IRCA’s text alters the NLRA’s definition of “employee.” NLRA section 2(3), 29 U.S.C. § 152(3), continues to define “employee” exactly the same way it did when the Sure-Tan Court held that “undocumented aliens ... plainly come within the broad statutory definition of ‘employee.’ ” 467 U.S. at 892, 104 S.Ct. 2803. Thus, Agri Processor must be arguing that IRCA and the NLRA conflict, requiring us to read IRCA as implicitly repealing the NLRA’s definition of “employee” to the extent that it includes undocumented aliens. But “where two statutes are ‘capable of coexistence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective.’ ” Ruckelshaus v. Monsanto Co., 467 U.S. 986, 1018, 104 S.Ct. 2862, 81 L.Ed.2d 815 (1984) (quoting Reg’l Rail Reorganization Act Cases, 419 U.S. 102, 133— 34, 95 S.Ct. 335, 42 L.Ed.2d 320 (1974)). Thus, courts should not infer that one statute has partly repealed another “unless the later statute expressly contradicts the original act or unless such a construction is absolutely necessary ... in order that the words of the later statute shall have any meaning at all.” Nat’l Ass’n of Home Builders v. Defenders of Wildlife, — U.S. -, 127 S.Ct. 2518, 2532, 168 L.Ed.2d 467 (2007) (citations and internal quotation marks omitted). Neither condition is even arguably met here. Because IRCA nowhere states that undocumented aliens no longer qualify as employees under the NLRA, it does not “expressly contradict the original act.” And IRCA has meaning without being read as partly repealing the NLRA: it prohibits employers from hiring undocumented aliens, which would otherwise be legal. See Matsushita Elec. Indus. Co. v. Epstein, 516 U.S. 367, 381, 116 S.Ct. 873, 134 L.Ed.2d 6 (1996) (“The rarity with which we have discovered implied repeals is due to the relatively stringent standard for such findings, namely, that there be an irreconcilable conflict between the two federal statutes at issue.” (citations and internal quotation marks omitted)).
Moreover, “[ajmendments by implication, like repeals by implication, are not favored,” United States v. Welden, 377 U.S. 95, 102 n. 12, 84 S.Ct. 1082, 12 L.Ed.2d 152 (1964), “and will not be found unless an intent to repeal [or amend] is ‘clear and manifest.’ ” Rodriguez v. United States, 480 U.S. 522, 524, 107 S.Ct. 1391, 94 L.Ed.2d 533 (1987) (quoting United States v. Borden Co., 308 U.S. 188, 198, 60 S.Ct. 182, 84 L.Ed. 181 (1939)). Here, not only is there no clear indication that Congress intended IRCA implicitly to amend the NLRA, but all available evidence actually points in the opposite direction. The House Judiciary Committee Report on IRCA is clear:
It is not the intention of the Committee that the employer sanctions provisions of the bill be used to undermine or diminish in any way labor protections in existing law, or to limit the powers of federal or state labor relations boards, labor standards agencies, or labor arbitrators to remedy unfair practices committed against undocumented employees for exercising their rights before such agencies or for engaging in activities protected by existing law. In particular, *5 the employer sanctions provisions are not intended to limit in any way the scope of the term “employee” in Section 2(3) of the National Labor Relations Act (NLRA), as amended, or of the rights and protections stated in Sections 7 and 8 of that Act. As the Supreme Court observed in Sure-Tan Inc. v. NLRB, 467 U.S. 883 [104 S.Ct. 2803, 81 L.Ed.2d 732] (1984)[,] application of the NLRA “helps to assure that the wages and employment conditions of lawful residents are not adversely affected by the competition of illegal alien employees who are not subject to the standard terms of employment.”
H.R.Rep. No. 99-682, pt. 1, at 58 (1986), as reprinted in 1986 U.S.C.C.A.N. 5649, 5662. Similarly, the House Education and Labor Committee Report says that no provision of IRCA
limit[s] the powers of State or Federal labor standards agencies such as the Occupational Safety and Health Administration, the Wage and Hour Division of the Department of Labor, the Equal Employment Opportunity Commission, the National Labor Relations Board, or Labor arbitrators, in conformity with existing law, .to remedy unfair practices committed against undocumented employees for exercising their rights before such agencies or for engaging in activities protected by these agencies. To do otherwise would be counter-productive of our intent to limit the hiring of undocumented employees and the depressing effect on working conditions caused by their employment.
Id. pt. 2, at 8-9, as reprinted in 1986 U.S.C.C.A.N. 5757, 5758. These two passages are the only places in IRCA’s legislative history where Congress discussed the NLRA. Rather than showing that IRCA was “clear[ly] and manifestly]” intended to amend the NLRA’s definition of “employee,” Rodriguez, 480 U.S. at 524, 107 S.Ct. 1391, they show precisely the opposite.
Perhaps Agri-Processor is arguing that in making it unlawful for employers to hire undocumented aliens, Congress must have intended to end job protections for such workers, even though it never said as much anywhere in IRCA’s text or history. But this hardly follows, for it is quite possible that even as Congress barred employers from hiring undocumented aliens, it still intended for the NLRA to apply to such aliens. The Sure-Tan Court explained: “Application of the NLRA [to illegal aliens] helps to assure that the wages and employment conditions of lawful residents are not adversely affected by the competition of illegal alien employees who are not subject to the standard terms of employment.” 467 U.S. at 893, 104 S.Ct. 2803. And “[i]f an employer realizes that there will be no advantage under the NLRA in preferring illegal aliens to legal resident workers, any incentive to hire such illegal aliens is correspondingly lessened.” Id.
In sum, there is absolutely no evidence that in passing IRCA Congress intended to repeal the NLRA to the extent its definition of “employee” includes undocumented aliens. Thus, the NLRA’s plain language, as applied by the Supreme Court in Sure-Tan, continues to control after IRCA, as the Seventh, Ninth, and Eleventh Circuits have all held. See NLRB v. Concrete Form Walls, Inc., 225 Fed.Appx. 837 (11th Cir.2007) (upholding the NLRB’s conclusion in Concrete Form, Walls, 346 N.L.R.B. No. 80, that undocumented workers remain statutory employees under the NLRA after IRCA); NLRB v. Kolkka, 170 F.3d 937, 941 (9th Cir.1999) (holding that the NLRA continues to define undocumented aliens as employees after IRCA); Del Rey Tortilleria, Inc. v. *6 NLRB, 976 F.2d 1115, 1121 (7th Cir.1992) (same); cf. Patel v. Quality Inn S., 846 F.2d 700, 704-05 (11th Cir.1988) (rejecting the claim that IRCA implicitly amended the Fair Labor Standards Act’s definition of “employee”). No circuit court has reached a contrary conclusion.
The dissent, instead of attempting to show implied repeal under the Supreme Court’s established rules for doing so, creates its own rule. It claims we should read IRCA as implicitly amending the NLRA not because of anything Congress said in IRCA’s text or history, but rather because of something the Sure-Tan Court said two years before IRCA’s enactment in a passage Agri Processor never cites. Specifically, after the Sure-Tan Court held that “undocumented aliens ... plainly come within the [NLRA’s] broad statutory definition of ‘employee,’ ” 467 U.S. at 892, 104 S.Ct. 2803, it went on to explain why it found no conflict between its holding and then-existing immigration law. The Court said that because the law at that time did not bar hiring undocumented aliens, “there [wa]s no reason to conclude” that immigration law conflicted with the NLRA’s protection of such employees. Id. at 893, 104 S.Ct. 2803. According to the dissent, this passage means that once IRCA made it unlawful to hire undocumented aliens, immigration law had to conflict with the NLRA’s broad definition of “employee.” See Dissenting Op. at 10-11. But this does not logically follow, as an example illustrates: “Because it’s not cold outside, it’s not snowing. It is now cold outside, therefore it must be snowing.” See Pat-RICK J. HURLEY, A CONCISE INTRODUCTION TO Logic 323 (9th ed.2005) (explaining the fallacy of denying the antecedent, in which a person reasons from a statement phrased as “because not p, not q,” that once p happens q will necessarily follow). The dissent claims its reading of this passage is necessary to prevent it from being “entirely meaningless.” Dissenting Op. at 12. But the Sure-Tan majority had an obvious reason for including the passage that is far more plausible than the dissent’s theory that the Court was holding how it would treat a hypothetical immigration statute not before it: to refute the Sure-Tan dissent’s claim that then-existing immigration law precluded reading the NLRA as applying to undocumented aliens. See Sure-Tan, 467 U.S. at 913, 104 S.Ct. 2803 (Powell, J., dissenting).
More fundamentally, even if the Supreme Court had said immigration law would inevitably conflict with the NLRA’s definition of “employee” if hiring undocumented aliens became unlawful, the Court never explained haw it would resolve such a conflict. And rather than applying the Supreme Court’s rule for determining whether two statutes irreconcilably conflict so that we must read the later as implicitly repealing the earlier, the dissent reverses the rule, stating: “if Congress in [passing IRCA] wished to say that illegal immigrant workers ... [rem'ain] ‘employees’ protected by the NLRA, it would have said so in the text of IRCA.” Dissenting Op. at 14. Thus, instead of making “repeals by implication ... disfavored,” Reg’l Rail, 419 U.S. at 133, 95 S.Ct. 335, and demanding that “the intention of the legislature to repeal ... be clear and manifest,” Posadas v. Nat’l City Bank of N.Y., 296 U.S. 497, 503, 56 S.Ct. 349, 80 L.Ed. 351 (1936), the dissent presumes repeal because Congress never expressly declared that it wanted to avoid an implied repeal — all because of one paragraph from Sure-Tan the dissent misreads. But the Supreme Court “ha[s] never held that Congress must speak with different gradations of clarity depending on the specific circumstances of the relevant legislation.” Kimel v. Fla. Bd. of Regents, 528 U.S. 62, 76, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000). The dissent’s rule *7 would lead to the absurd result that the Supreme Court — or any court for that matter — could alter the plain meaning of future legislation simply by announcing what current legislation does not mean.
Of course, the dissent is correct that “[w]hen the Supreme Court has issued a statutory decision and Congress then acts to change the relevant law, it flouts congressional will for a lower court to ignore the new statute and rely reflexively on the result of the old Supreme Court case.” Dissenting Op. at 12. But this principle has no application here because Congress never “change[d] the relevant law.” As we have shown above, IRCA neither explicitly nor implicitly amended the NLRA. Thus, this case is nothing like the examples the dissent cites in which the Supreme Court interpreted a statute and Congress later amended that statute. See id. at 12. In those examples, Congress obviously overturned the Supreme Court’s decisions — it expressly changed the statutory provision the Court had interpreted to achieve the opposite result. By contrast, after the Sure-Tan Court read the plain language of the NLRA’s definition of “employee” to cover undocumented aliens, Congress did not change the NLRA to “expressly exempt! ]” undocumented aliens from its coverage. Sure-Tan, 467 U.S. at 892, 104 S.Ct. 2803. Instead, Congress changed immigration law, never even hinting it intended to amend the NLRA. Congress’s decision not to amend the NLRA’s definition of “employee” is all the more striking given that it has previously amended that definition when it disagreed with the Supreme Court’s interpretation of the Act. See Labor Management Relations Act, 1947, Pub.L. No. 80-101, § 2(3), 61 Stat. 136, 137-38 (amending the NLRA’s definition of “employee” to exclude independent contractors and supervisors, whom the Supreme Court had held covered under the original version of the Act in NLRB v. Hearst Publications, Inc., 322 U.S. 111, 131-32, 64 S.Ct. 851, 88 L.Ed. 1170 (1944), and Packard Motor Car Co. v. NLRB, 330 U.S. 485, 488-90, 67 S.Ct. 789, 91 L.Ed. 1040 (1947), respectively); see also Kimbrough v. United States, — U.S. -, 128 S.Ct. 558, 571, 169 L.Ed.2d 481 (2007) (“Drawing meaning from silence is particularly inappropriate here, for Congress has shown that it knows how to [address the question at issue] in express terms.”).
The dissent also criticizes our use of legislative history. But because IRCA, by its terms, does not amend the NLRA, it is the dissent tha1> — at least under the Supreme Court’s rules for implied repeal— must find in IRCA’s history “clear and manifest” legislative intent to amend the NLRA. Rodriguez, 480 U.S. at 524, 107 S.Ct. 1391. We cite legislative history only to demonstrate how far Agri Processor and the dissent are from meeting this standard. Thus, Shannon v. United States, 512 U.S. 573, 114 S.Ct. 2419, 129 L.Ed.2d 459 (1994), upon which the dissent relies, has nothing to do with this case. There the Court refused to “abandon altogether the text of the statute” in order to “give effect to [a] snippet of legislative history.” Id. at 583, 114 S.Ct. 2419. Here, by contrast, we hew closely to the text of the NLRA and IRCA, while the dissent seeks to “abandon [it] altogether.”
Returning now to Agri Processor’s arguments, we think the company’s reliance on Hoffman Plastic is entirely misplaced. In that case, the Supreme Court addressed only what remedies the Board may grant undocumented aliens when employers violate their rights under the NLRA. Nowhere in Hoffman Plastic did the Court hold that IRCA leaves undocumented aliens altogether unprotected by the NLRA. Indeed, the Court explicitly declined to revisit Sure-Tan’s holding that undocumented aliens are employees under *8 the NLRA, 535 U.S. at 149 n. 4, 122 S.Ct. 1275, and said that remedies other than backpay — such as cease and desist orders — can still be imposed for NLRA violations committed against undocumented aliens, see id. at 152, 122 S.Ct. 1275. Thus, neither IRCA nor Hoffman Plastic alters the NLRA’s definition of “employee” as applied by the Supreme Court in Sure-Tan.
Even were we less certain about the meaning of Hoffman Plastic and IRCA, we would still reach the same result. First, if we thought that Hoffman Plastic’s reasoning cast some doubt on Sure-Tan’s clear holding — which we don’t — we would still follow Sure-Tan, for as the Supreme Court held in Rodriguez de Quijas v. Shearson/Am. Express, Inc., 490 U.S. 477, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989): “If a precedent of [the Supreme] Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to [the Supreme] Court the prerogative of overruling its own decisions.” Id. at 484, 109 S.Ct. 1917. Sure-Tan, not Hoffman Plastic, “directly controls” this case.
Second, even were it unclear whether the NLRA’s definition of “employee” included undocumented aliens — which it isn’t — we would still defer to the Board’s decision to include them. “Since the task of defining the term ‘employee’ is one that ‘has been assigned primarily to the [Board],’ the Board’s construction of that term is entitled to considerable deference, and we will uphold any interpretation that is reasonably defensible.” Sure-Tan, 467 U.S. at 891, 104 S.Ct. 2803 (quoting Hearst, 322 U.S. at 130, 64 S.Ct. 851). Including undocumented aliens within the meaning of “employee” is entirely reasonable because “extending the coverage of the [NLRA] to such workers is consistent with the Act’s avowed purpose of encouraging and protecting the collective-bargaining process.” Id. at 892, 104 S.Ct. 2803. Leaving undocumented workers without the NLRA’s protections would “create[ ] a subclass of workers without a comparable stake in the collective goals of their legally resident co-workers, thereby eroding the unity of all the employees and impeding effective collective bargaining.” Id.
Finally, Agri Processor suggests that if neither Hoffman Plastic nor IRCA requires the result it seeks, we should still rule in its favor “in light of the recent policy changes and debate over the burden of illegal immigration in this country.” Pet’r’s Opening Br. 32. Given Sure-Tan and the NLRA’s broad definition of “employee,” however, the company must make this argument to Congress, not this court.
III.
This brings us to Agri Processor’s second argument — that the Board may not place undocumented aliens and legal workers in the same bargaining unit. NLRA section 9(b) “vests in the Board authority to determine ‘the unit appropriate for the purposes of collective bargaining.’ ” NLRB v. Action Auto., Inc., 469 U.S. 490, 494, 105 S.Ct. 984, 83 L.Ed.2d 986 (1985) (quoting 29 U.S.C. § 159(b)). “[I]n defining bargaining units, [the Board’s] focus is on whether the employees share a ‘community of interest.’ ” Id. at 494, 105 S.Ct. 984. The community of interests test turns “on the interests of employees as employees, not their interests more generally.” Speedrack Prods. Group, Ltd. v. NLRB, 114 F.3d 1276, 1280 (D.C.Cir.1997). The Board, moreover, has “broad discretion in making unit determinations, and its unit determinations are accorded particu *9 lar deference by a reviewing court.” Id. at 1278.
Agri Processor argues that undocumented aliens and legal workers lack a community of interest in two respects. First, the company argues that “[t]he incorporation of the undocumented workers with otherwise lawful and eligible workers as members of the bargaining unit ... caused the votes of the eligible workers to become diluted, resulting in the disenfranchisement of the bargaining unit’s lawful and eligible workers.” Pet’r’s Opening Br. 83. As we have already explained, however, undocumented aliens qualify as employees under the NLRA, so their votes are just as valid as those of legal workers.
Second, Agri Processor maintains that because undocumented aliens have no legitimate expectation of continued future employment, their interests differ from those of legal employees. But as the Board explains:
[Ujndocumented workers’ fear of detection and termination does not prevent them from sharing a community of interest with their coworkers. That fear is counterbalanced by a hope of continuing their employment indefinitely, giving them a similar expectation of future employment as ‘regular’ at-will employees who hold their jobs at the whim of their employers. Resp’t’s Br. 21. The Board also correctly points out that “expected tenure is not necessarily dispositive of the community-of-interest inquiry.” Id. Indeed, the Board has previously approved — and we have upheld — allowing workers to vote even when, at the time of the election, the workers knew they would soon leave for another job. See, e.g., Saint-Gobain Indus. Ceramics, Inc. v. NLRB, 810 F.3d 778, 782-83 (D.C.Cir.2002).
Furthermore, “the focus of the community of interests test is on the interests of employees as employees, not their interests more generally.” Speedrack, 114 F.3d at 1280. Thus, “to determine if a community of interest exists,” the Board typically looks at “the similarity of wages, benefits, skills, duties, working conditions, and supervision of the employee.” Id. at 1278. With regard to each of these factors, undocumented workers and legal workers in a bargaining unit are identical. While undocumented aliens may face penalties for violating immigration laws, they receive the same wages and benefits as legal workers, face the same working conditions, answer to the same supervisors, and possess the same skills and duties.
In short, Agri Processor has failed to show that the interests of undocumented workers as employees differ in any way from those of legal workers. Indeed, the company has come nowhere close to making the type of showing needed to overcome the high degree of deference we owe the Board’s unit determinations.
IV.
For the reasons stated above, we deny Agri Processor’s petition for review and grant the Board’s cross-petition for enforcement.

So ordered.