# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued February 7, 2013        Decided March 15, 2013

No. 11-1477

BRIAN HUNTER,
PETITIONER

v.

FEDERAL ENERGY REGULATORY COMMISSION,
RESPONDENT

COMMODITY FUTURES TRADING COMMISSION,
INTERVENOR

———

On Petition for Review of Orders of
the Federal Energy Regulatory Commission

———

*Michael S. Kim* argued the cause for petitioner. With him on the briefs were *Melanie Oxhorn*, *Leanne A. Bortner*, and *Andrew C. Lourie*.

*Mary T. Connelly*, Assistant General Counsel, Commodity Futures Trading Commission, argued the cause for intervenor. With her on the briefs were *Dan M. Berkowitz*, General Counsel, and *Jonathan L. Marcus*, Deputy General Counsel.

*Robert H. Solomon*, Solicitor, Federal Energy Regulatory Commission, argued the cause for respondent. With him on

the brief were *Lona T. Perry*, Senior Attorney, and *Robert M. Kennedy*, Attorney.

Before: HENDERSON and TATEL, *Circuit Judges*, and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* TATEL.

TATEL, *Circuit Judge*: Pursuant to the Energy Policy Act of 2005, the Federal Energy Regulatory Commission fined petitioner $30 million for manipulating natural gas futures contracts. According to petitioner, FERC lacks authority to fine him because the Commodity Futures Trading Commission has exclusive jurisdiction over all transactions involving commodity futures contracts. Because manipulation of natural gas futures contracts falls within the CFTC's exclusive jurisdiction and because nothing in the Energy Policy Act clearly and manifestly repeals the CFTC's exclusive jurisdiction, we grant the petition for review.

## I.

Petitioner Brian Hunter, an employee of the hedge fund Amaranth, traded natural gas futures contracts on the New York Mercantile Exchange (NYMEX), a CFTC-regulated exchange. For those unfamiliar with the complexities of commodity futures trading, the Second Circuit offers a crisp explanation:

> A commodities futures contract is an executory contract for the sale of a commodity executed at a specific point in time with delivery of the commodity postponed to a future date. Every commodities futures contract has a seller and a buyer. The seller, called a "short," agrees for a price, fixed at the time of contract, to deliver a specified quantity and grade

of an identified commodity at a date in the future. The buyer, or "long," agrees to accept delivery at that future date at the price fixed in the contract. It is the rare case when buyers and sellers settle their obligations under futures contracts by actually delivering the commodity. Rather, they routinely take a short or long position in order to speculate on the future price of the commodity.

*Strobl v. New York Mercantile Exchange*, 768 F.2d 22, 24 (2d Cir. 1985). This case arises from Hunter's alleged manipulation of the "settlement price" for natural gas futures contracts, which is determined by the volume-weighted average price of trades during the "settlement period" for natural gas futures. The settlement price may affect the price of natural gas for the following month.

According to FERC, Hunter sold a significant number of natural gas futures contracts during the February, March, and April 2006 settlement periods. During these settlement periods, Hunter's sales ranged from 14.4% to 19.4% of market volume. Given their volume and timing, Hunter's sales reduced the settlement price for natural gas. Hunter's portfolio benefited from these sales because he had positioned his assets in the natural gas market to capitalize on a price decrease—that is, he shorted the price for natural gas.

Hunter's trades caught the attention of federal regulators. On July 25, 2007, the CFTC filed a civil enforcement action against Hunter, alleging that he violated section 13(a)(2) of the Commodity Exchange Act by manipulating the price of natural gas futures contracts. 7 U.S.C. § 13(a)(2). The next day, FERC filed an administrative enforcement action against Hunter, alleging that he violated section 4A of the Natural Gas Act, which prohibits manipulation. 15 U.S.C. § 717c-1.

FERC claimed that Hunter's manipulation of the settlement price affected the price of natural gas in FERC-regulated markets. Following a lengthy administrative process, FERC ruled against Hunter and imposed a $30 million fine.

Hunter now petitions for review. He argues, amongst other things, that FERC lacks jurisdiction to pursue this enforcement action. The CFTC has intervened in support of Hunter on this issue. In refereeing this jurisdictional turf war, we cannot defer to either agency's attempt to reconcile its statute with the other agency's statute. Because the "premise of *Chevron* deference is that Congress has delegated the administration of a particular statute to an executive branch agency, . . . we have never deferred where two competing governmental entities assert conflicting jurisdictional claims." *Salleh v. Christopher*, 85 F.3d 689, 691–92 (D.C. Cir. 1996).

## II.

Since enacting the Future Trading Act of 1921, Congress has regulated futures markets to prevent undue speculation. *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran*, 456 U.S. 353, 360 (1982). After its initial regulatory scheme was declared unconstitutional, *see Hill v. Wallace*, 259 U.S. 44 (1922), Congress quickly responded by enacting the Grain Futures Act of 1922, which the Court upheld, *see Board of Trade of City of Chicago v. Olsen*, 262 U.S. 1 (1923). In 1936, Congress yet again revamped the regulation of futures contracts by enacting the Commodity Exchange Act. The CEA, however, covered only a fraction of commodity futures and oversight responsibility was lodged in a commission composed of the Attorney General and the Secretaries of Commerce and Agriculture. Congress ended this hodgepodge regulatory system in 1974 by amending the Commodity Exchange Act and establishing the CFTC as we know it today. *See Curran*, 456 U.S. at 360–65.

Most significantly for this case, CEA section 2(a)(1)(A) provided, at the time of Hunter's trades, that:

> The Commission shall have *exclusive jurisdiction* . . . with respect to accounts, agreements (including any transaction which is of the character of, or is commonly known to the trade as, an "option", "privilege", "indemnity", "bid", "offer", "put", "call", "advance guaranty", or "decline guaranty"), and transactions involving contracts of sale of a commodity for future delivery, traded or executed on a contract market designated or derivatives transaction execution facility registered pursuant to section 7 or 7a of this title or any other board of trade, exchange, or market, and transactions subject to regulation by the Commission . . . . *Except as hereinabove provided*, nothing contained in this section shall (I) supersede or limit the jurisdiction at any time conferred on the Securities and Exchange Commission or other regulatory authorities under the laws of the United States or of any State, or (II) restrict the Securities and Exchange Commission and such other authorities from carrying out their duties and responsibilities in accordance with such laws.

7 U.S.C. § 2(a)(1)(A) (emphases added). Stated simply, Congress crafted CEA section 2(a)(1)(A) to give the CFTC exclusive jurisdiction over transactions conducted on futures markets like the NYMEX.

In response to the California energy crisis, Congress enacted the Energy Policy Act of 2005, which significantly expanded FERC's authority to regulate manipulation in energy markets. As codified at section 4A of the Natural Gas Act, the statute makes it

> unlawful for any entity, directly or indirectly, to use or employ, in connection with the purchase or sale of natural gas or the purchase or sale of transportation services subject to the jurisdiction of the Commission, any manipulative or deceptive device or contrivance . . . in contravention of such rules and regulations as the Commission may prescribe as necessary in the public interest or for the protection of natural gas ratepayers.

15 U.S.C. § 717c-1. FERC subsequently promulgated regulations prohibiting manipulative trading in natural gas. *See Prohibition of Energy Market Manipulation*, 71 Fed. Reg. 4244-03 (Jan. 26, 2006) (codified at 18 C.F.R. § 1c.1).

The Energy Policy Act contains only two references to the CFTC. As codified at section 23 of the Natural Gas Act, the statute states:

> (1) Within 180 days of . . . enactment of this section, the Commission shall conclude a memorandum of understanding with the [CFTC] relating to information sharing, which shall include, among other things, provisions ensuring that information requests to markets within the respective jurisdiction of each agency are properly coordinated to minimize duplicative information requests, and provisions regarding the treatment of proprietary trading information.

> (2) Nothing in this section may be construed to limit or affect the exclusive jurisdiction of the [CFTC] under the Commodity Exchange Act (7 U.S.C. 1 et seq.).

15 U.S.C. § 717t-2(c). In other words, section 23 requires FERC and the CFTC to enter into a memorandum of understanding about information sharing. Section 23 further provides that it has no effect on the CFTC's exclusive jurisdiction.

As we see it, this case reduces to two questions. First, does CEA section 2(a)(1)(A) encompass manipulation of natural gas futures contracts? If yes, then we need to answer the second question: did Congress clearly and manifestly intend to impliedly repeal CEA section 2(a)(1)(A) when it enacted the Energy Policy Act of 2005?

A quick glance at the statute's text answers the first question. CEA section 2(a)(1)(A) vests the CFTC with "exclusive jurisdiction . . . with respect to accounts, agreements[,] . . . and transactions involving contracts of sale of a commodity for future delivery, traded or executed" on a CFTC-regulated exchange. 7 U.S.C. § 2(a)(1)(A). Here, FERC fined Hunter for trading natural gas futures contracts with the intent to manipulate the price of natural gas in another market. Hunter's scheme, therefore, involved transactions of a commodity futures contract. By CEA section 2(a)(1)(A)'s plain terms, the CFTC has exclusive jurisdiction over the manipulation of natural gas futures contracts.

Against the statute's plain text, FERC marshals two counterarguments. According to FERC, although it and the CFTC "each have exclusive jurisdiction over the day-to-day regulation of their respective physical energy and financial markets, where, as here, there is manipulation in one market that directly or indirectly affects the other market, both agencies have an enforcement role." Respondent's Br. 21 (internal quotation marks omitted). But FERC's contention that the CFTC may exclusively regulate only day-to-day

trading activities—not an overarching scheme like manipulation—finds no support in CEA section 2(a)(1)(A)'s text. Moreover, as the CFTC points out, "[a]cceptance of FERC's jurisdictional test would allow any agency having authority to prosecute manipulation of the spot price of a commodity to lawfully exercise jurisdiction with respect to the trading of futures contracts in that commodity." CFTC Reply Br. 3. Such an interpretation would eviscerate the CFTC's exclusive jurisdiction over commodity futures contracts and defeat Congress's very clear goal of centralizing oversight of futures contracts. *See, e.g.*, S. Rep. No. 93-1131, at 6 (1974) (stating that CEA section 2(a)(1)(A) "make[s] clear that (a) the Commission's jurisdiction over futures contract markets or other exchanges is exclusive and includes the regulation of commodity accounts, commodity trading agreements, and commodity options; [and] (b) the Commission's jurisdiction, where applicable, supersedes States as well as Federal agencies"). To be sure, CEA section 2(a)(1)(A)'s second sentence preserves the jurisdiction of other federal agencies, but its first sentence makes clear that the CFTC's jurisdiction is exclusive with regards to accounts, agreements, and transactions involving commodity futures contracts on CFTC-regulated exchanges. Thus, if a scheme, such as manipulation, involves buying or selling commodity futures contracts, CEA section 2(a)(1)(A) vests the CFTC with jurisdiction to the exclusion of other agencies.

FERC also relies on our decision in *FTC v. Ken Roberts Co.*, 276 F.3d 583 (D.C. Cir. 2001). There, the FTC subpoenaed a company for information concerning its instructional courses about futures market trading. The company argued that the FTC had no jurisdiction to investigate instructional courses about futures markets because only the CFTC could regulate such activities. The odd procedural posture of the case meant that the subpoena

had to be enforced unless the FTC had a "patent lack of jurisdiction." *Id.* at 587 (internal quotation marks omitted). Concluding that an instructional course about futures trading did not qualify as a contract, agreement, or transaction on a commodity futures market, we held that the CFTC lacked exclusive jurisdiction and the FTC's subpoena could be enforced. *See id.* at 589. According to FERC, *Ken Roberts* is significant because it draws a line between what the CFTC may regulate and what it may regulate *exclusively*.

As we read *Ken Roberts*, the decision actually supports Hunter's position because it endorses a robust view of the CFTC's exclusive jurisdiction. For example, we remarked that the CFTC "was invested with exclusive jurisdiction over certain aspects of the futures trading market. The aim of [CEA section 2(a)(1)(A)], according to one of its chief sponsors, was to 'avoid unnecessary, overlapping and duplicative regulation,' especially as between the [SEC] and the new CFTC." *Id.* at 588 (quoting 120 Cong. Rec. H34,736 (Oct. 9, 1974)) (citation omitted). "[T]he word 'transactions,' " we further explained, "conveys a reciprocity, a mutual exchange, which seem[ed] absent from the allegedly deceptive advertising materials that the FTC [sought] to investigate." *Id.* at 589. By contrast, Hunter's alleged manipulation scheme involved transacting in commodity futures contracts, thus falling on the other side of the *Ken Roberts* dividing line. To be clear, there are limits to what comes within CEA section 2(a)(1)(A)'s orbit, but once a scheme crosses the statute's event horizon, the CFTC has exclusive jurisdiction.

Because any infringement of the CFTC's exclusive jurisdiction would effectively repeal CEA section 2(a)(1)(A), we must next determine whether, as FERC insists, the Energy Policy Act constitutes a repeal by implication. On this front,

FERC carries a heavy burden. As the Supreme Court has frequently observed, "repeals by implication are not favored." *Universal Interpretive Shuttle Corp. v. Washington Metropolitan Area Transit Commission*, 393 U.S. 186, 193 (1968). And as we have explained, repeals by implication "will not be found unless an intent to repeal . . . is *clear and manifest*." *Agri Processor Co. v. NLRB*, 514 F.3d 1, 4 (D.C. Cir. 2008) (emphasis added) (internal quotations marks omitted). Moreover, "courts should not infer that one statute has partly repealed another 'unless the later statute expressly contradicts the original act or unless such a construction is absolutely necessary.' " *Id.* (quoting *National Association of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 662 (2007)).

FERC argues that the Energy Policy Act of 2005 contemplates complementary jurisdiction between it and the CFTC. Beginning with section 4A's text, FERC contends that it is empowered to prohibit manipulation not only in FERC-regulated markets but also when the manipulation "coincides with—*i.e.*, is 'in connection with,' 'directly or indirectly'— FERC-jurisdictional gas transactions." Respondent's Br. 18 (quoting 15 U.S.C. § 717c-1). But section 4A's text fails to answer the question whether FERC may intrude upon the CFTC's exclusive jurisdiction. More importantly, because FERC is free to prohibit manipulative trading in markets outside the CFTC's exclusive jurisdiction, there is no "irreconcilable conflict" between the two statutes and therefore no repeal by implication. *Posadas v. National City Bank*, 296 U.S. 497, 503 (1936).

FERC next relies on section 23's savings clause, which states that "[n]othing in this section may be construed to limit or affect the exclusive jurisdiction of the [CFTC] under the Commodity Exchange Act." 15 U.S.C. § 717t-2(c)(2). FERC

interprets this clause as applying only to section 23's requirement that it and the CFTC enter into a memorandum of understanding. In addition to section 23's text, FERC points to legislative history indicating that Congress rejected a universal savings clause that would have applied to the Energy Policy Act as a whole.

But section 23 is far more ambiguous than FERC admits. By requiring the two agencies to enter into a memorandum of understanding to "ensur[e] that information requests to markets *within the respective jurisdiction of each agency* are properly coordinated," *id.* § 717t-2(c)(1) (emphasis added), section 23 indicates that the CFTC and FERC regulate *separate* markets. Given this ambiguity, a universal savings clause may have been unnecessary, especially given the strong presumption against implied repeals.

We are equally unpersuaded by FERC's remaining arguments. It relies on decisions from other courts addressing the CFTC's exclusive jurisdiction, but these cases are easily distinguishable: for example, one involves the interaction between the CEA's criminal provisions and FERC's exclusive authority over electricity markets, *see United States v. Reliant Energy Services, Inc.*, 420 F. Supp. 2d 1043, 1062–65 (N.D. Cal. 2006); another concerns antitrust statutes enacted prior to the passage of CEA section 2(a)(1)(A), thus reversing the implied repeal analysis that applies here, *see Strobl*, 768 F.2d at 26–28. FERC also relies on out-of-circuit cases involving the SEC, as well as the memorandum of understanding signed by the two commissions, but none of these extra-textual sources tells us anything about Congress's intent in passing the Energy Policy Act.

"[A]bsent a clearly expressed congressional intention" to repeal CEA section 2(a)(1)(A), *Morton v. Mancari*, 417 U.S.

535, 551 (1974), FERC cannot demonstrate that section 4A encroaches upon the CFTC's exclusive jurisdiction. Having failed to meet the high bar of showing an implied repeal, FERC lacks jurisdiction to charge Hunter with manipulation of natural gas futures contracts.

## III.

For the foregoing reasons, we grant the petition for review.

*So ordered.*