# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 72922-5-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| JACOB DALTON JOHANSEN, | ) | |
| | ) | |
| Appellant. | ) | FILED: June 27, 2016 |
| | ) | |

LEACH, J. — Jacob Johansen appeals his conviction for second degree assault with an aggravating circumstance of domestic violence. He challenges the trial court's admission of evidence of his prior acts of domestic violence against the victim. He also claims that his trial counsel provided ineffective assistance when he proposed a jury instruction that contained an improper comment on the evidence. Without deciding if the trial court improperly admitted evidence of Johansen's earlier acts of domestic violence, we conclude that any error was harmless because the outcome of the trial could not have been materially affected by the challenged evidence. And we conclude that Johansen's counsel's performance was not deficient where the proposed

instruction at issue was a standard pattern jury instruction[1] that no court had concluded was improper until after the end of Johansen's trial. We affirm.

FACTS

Late one evening in December 2013, Johansen and his friend Kyle Wilson returned to the home Johansen shared with Alexandra Boring and their young son. Johansen and Boring began to argue. Boring testified that Johansen choked her twice while they were in the bedroom. The second time he choked her, she urinated on herself. When he let go, she immediately vomited near the bed and then got back up. Johansen pushed her onto a computer desk. She went back to the bed, and he broke a picture frame on top of her head. Then he left the house. Boring went out to where Johansen and Wilson were loading Johansen's car and demanded the house key, which he gave her.

Johansen testified that when he and Wilson arrived at the house, Boring came to the door angry, yelled at him, and threw things while he packed his bags and left without touching her. Wilson testified that Boring met them at the door and started yelling at Johansen, asking him where he had been all day and if he was cheating on her. He testified that Boring threw things when she got mad at Johansen. He testified that during their argument, he had gone in and out of the house several times and had heard only Boring yelling at Johansen and nothing

---

[1] 11A Washington Practice: Washington Pattern Jury Instructions: Criminal 300.17, at 719 (3d ed. 2008) (WPIC).

more. Wilson also testified that when Boring and Johansen came out of the room, Boring was crying but appeared unharmed.

After the incident, Boring called her mother, Rhonda Boring. Rhonda told her that during Boring's exchange with Johansen, his phone had pocket-dialed her father, Scott Boring. Due to the pocket dial, Rhonda had called 911 and told Boring to call 911. Boring "thought about it for a minute and then I figured she already did, so I might as well."

Boring's father, Scott, testified that after the incident, he drove to Boring's home. On the way, he spoke with Johansen on the phone, who reported that he and Boring had had a violent fight. When Scott arrived at the house, he immediately went inside, where he found Boring crying. She had red compression marks on her neck, and he found a broken picture frame and broken glass on the bed.

When police arrived, Officer Jay West saw that Boring was distraught and had redness on her neck. West also saw that she was limping, her clothes were disheveled, and her pants were wet. In the bedroom he observed a computer monitor knocked over, vomit residue on the carpet, and a broken frame on the bed. While Boring told West her story, she told him that she would not make a formal statement because she was afraid Johansen would kill her.

Rhonda arrived and observed that Boring appeared upset, had wet pants, and had bruises on her neck. She later took Boring to the hospital to address a leg injury from the incident that left Boring in a knee brace.

Detective David Shields spoke with Johansen the day after the incident. Johansen denied having physical contact with Boring. Shields met with Boring two days after the incident and saw a brace on her right knee, some red marks and scrapes on her neck, scratches on her leg, and bruising near her left eye and on the right side of her neck. She was tearful when she described the incident with Johansen to him. Shields is a domestic violence detective. Based on his personal experience responding to calls involving strangulation, he testified that the effects of strangulation can include redness on the neck, bruising, and loss of bladder control.

The State charged Johansen with second degree assault involving domestic violence, with the aggravating circumstance that the assault was part of an ongoing pattern of psychological, physical, or sexual abuse of the victim over a prolonged period of time.

At trial, the State sought to admit testimony alleging that Johansen had engaged in domestic violence against Boring for several years. The State contended that the court should admit this evidence because it showed that "this is how Mr. Johansen acts." Johansen objected, asserting that this constituted

propensity evidence under ER 404(b). The trial court concluded that the testimony was admissible, reasoning that because Johansen would argue that Boring fabricated an assault, the jury needed information about earlier incidents of domestic violence.

The trial court permitted Boring to testify that Johansen was violent during the relationship and that his violence toward her escalated, but the court limited testimony about specific details of the alleged violence. She testified that he often choked her. Her parents testified that he was violent toward their daughter. The court instructed the jury that it could consider this evidence only for the purpose of evaluating Boring's credibility.

The jury convicted Johansen, and the trial court imposed an exceptional sentence. Johansen appeals.

## STANDARD OF REVIEW

This court reviews a trial court decision to admit or exclude evidence for abuse of discretion. We reverse only if the trial court made a manifestly unreasonable decision or based its decision upon untenable grounds or reasons.[2]

---

[2] State v. Gunderson, 181 Wn.2d 916, 921-22, 337 P.3d 1090 (2014) (quoting State v. Brown, 132 Wn.2d 529, 572, 940 P.2d 546 (1997)).

ANALYSIS

If a trial court improperly admits evidence of a defendant's earlier bad acts, this "error is harmless if the evidence is of minor significance compared to the overall evidence as a whole."[3] But this court must reverse if, "'within reasonable probabilities, had the error not occurred, the outcome of the trial would have been materially affected.'"[4]

Here, the trial court instructed the jury that it could consider the testimony of Johansen's earlier domestic violence against Boring for the purpose of establishing her credibility. Johansen asserts that Boring never gave conflicting statements or testimony and thus no relevant purpose existed to justify admitting the evidence. Johansen also asserts that the prejudicial effect of that evidence greatly outweighed any probative value it offered.

We do not decide if the trial court improperly admitted evidence of Johansen's prior acts of domestic violence because any error in admitting the evidence was harmless. Johansen argues that the prejudicial effect of the evidence of his prior acts necessarily affected the outcome of his trial because the jury decided the case by weighing the conflicting testimony of Johansen and

---

[3] State v. Everybodytalksabout, 145 Wn.2d 456, 468-69, 39 P.3d 294 (2002).

[4] State v. Gresham, 173 Wn.2d 405, 425, 269 P.3d 207 (2012) (internal quotation marks omitted) (quoting State v. Smith, 106 Wn.2d 772, 780, 725 P.2d 951 (1986)).

-6-

Boring. But the State presented the jury with substantial evidence besides Boring's testimony. It presented testimony from both of her parents, the responding officer, and the detective that interviewed her. Each observed red marks or scratches on Boring's neck. Officer West testified that Boring appeared to have urinated on herself. He also saw vomit residue next to the bed, broken glass and a picture frame in the bed, and a computer monitor turned over. All this evidence corroborated Boring's testimony. The State played the 911 tape to the jury and admitted photographs of Boring's neck. The defense presented testimony from Johansen and Wilson denying the incident, but those accounts revealed inconsistencies with Johansen's earlier statements. The record thus does not show with reasonable probability that any improper admission of evidence of Johansen's earlier acts of domestic violence materially affected the outcome of the case. Thus, any error was harmless.

Johansen further argues that his trial counsel provided ineffective assistance when he proposed an instruction that impermissibly commented on the evidence. The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution guarantee the right to effective assistance of counsel.[5] To show that he received ineffective assistance of counsel, Johansen must show that counsel's performance was deficient and that

---

[5] Strickland v. Washington, 466 U.S. 668, 686, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

such deficient performance prejudiced him.[6] To prove deficient performance he must show that his counsel's representation "'fell below an objective standard of reasonableness based on consideration of all the circumstances.'"[7]

Johansen asserts that his counsel's performance was deficient because the jury instruction he proposed constituted a comment on the evidence. Johansen and the State both proposed jury instructions to the court for the aggravated sentence of domestic violence based on the accepted WPIC jury instruction. Johansen's proposed instruction told the jury that for it to find that the crime constituted an aggravated domestic violence offence, the State must prove beyond a reasonable doubt:

> (1) That the victim and the defendant were family or household members; and
> (2) That the offense was part of an ongoing pattern of psychological, physical, or sexual abuse of the victim manifested by multiple incidents over a prolonged period of time. An "ongoing pattern of abuse" means multiple incidents of abuse over a prolonged period of time. The term "prolonged period of time" means more than a few weeks.

The trial court gave this instruction to the jury in October 2014. In 2015, Washington's Supreme Court ruled in State v. Brush[8] that the definition of "prolonged period of time" in the jury instruction was an improper judicial

---

[6] See State v. Brett, 126 Wn.2d 136, 198, 892 P.2d 29 (1995); see also Strickland, 466 U.S. at 687.

[7] State v. Studd, 137 Wn.2d 533, 551, 973 P.2d 1049 (1999) (quoting State v. McFarland, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995)).

[8] 183 Wn.2d 550, 558-59, 353 P.3d 213 (2015).

comment on the evidence. The court held that what was a prolonged period of time presented a factual inquiry to be decided by the jury.[9] It concluded that this prejudiced the defendant, warranting reversal of an exceptional sentence.[10]

But we conclude that State v. Studd[11] forecloses Johansen's assertion that his counsel provided deficient representation. The court in Studd reviewed its earlier opinion in State v. LeFaber.[12] There, it concluded that the generally accepted instruction for self-defense, WPIC 16.02, was erroneous.[13] In Studd, counsel for one of the defendants had requested the same instruction at trial. After the Supreme Court published LeFaber, that defendant appealed, asserting ineffective assistance of counsel.[14] The Studd court held that because it had not decided LeFaber at the time of the defendant's trial, "his counsel can hardly be faulted for requesting a jury instruction based upon a then-unquestioned WPIC 16.02."[15] Because the defendant's counsel's performance could not have been deficient, the Studd court concluded that the defendant's argument failed.[16]

---

[9] Brush, 183 Wn.2d at 559.

[10] Brush, 183 Wn.2d at 559-60.

[11] 137 Wn.2d 533, 551, 973 P.2d 1049 (1999).

[12] 128 Wn.2d 896, 913 P.2d 369 (1996), abrogated by State v. O'Hara, 167 Wn.2d 91, 101-02, 217 P.3d 756 (2009).

[13] LeFaber, 128 Wn.2d at 902-03.

[14] Studd, 137 Wn.2d at 551.

[15] Studd, 137 Wn.2d at 551.

[16] Studd, 137 Wn.2d at 551; McFarland, 127 Wn.2d at 334-35 (citing State v. Thomas, 109 Wn.2d 222, 225-26, 743 P.2d 816 (1987)).

Because Johansen fails to cite any case that would have put his counsel on notice of the improper nature of the challenged instruction and fails to distinguish Studd,[17] his argument fails.

## CONCLUSION

Without deciding if the trial court improperly admitted evidence of Johansen's earlier acts of domestic violence, we conclude that any alleged error was harmless because Johansen has not shown, within reasonable probabilities, that admission of this evidence materially affected the outcome of this case. And because Johansen's counsel presented a generally accepted WPIC instruction before any court had determined that that instruction constituted an improper comment on the evidence, we conclude that his counsel's performance was not unreasonable and thus not deficient. We affirm.

Leach, J.

WE CONCUR:

Spearman, J.

Cox, J.

---

[17] See State v. Kyllo, 166 Wn.2d 856, 866, 215 P.3d 177 (2009) (Where several cases should have indicated to counsel that a pattern instruction was flawed, counsel should have been aware of those cases.).