

2016 JAN 25 A 9: 31

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 72347-2-I |
| | ) | |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| GREGORIO OLIVAREZ-AGUILAR, | ) | |
| | ) | |
| Appellant. | ) | FILED: January 25, 2016 |
| | ) | |

LAU, J. — Gregorio Olivarez-Aguilar appeals his jury trial convictions for second degree kidnapping with sexual motivation and third degree child rape. He argues that the trial judge commented on the evidence when she thanked the child witness for testifying and said "I know it was hard for you." Viewed in context, the court's remark did not violate the rule prohibiting judicial comment on the evidence and error, if any, was harmless. We affirm the judgment and sentence.

## FACTS

Gregorio Olivarez-Aguilar[1] dated Adela Moreno Garcia from 2012 until February 2014. In 2013, Olivarez-Aguilar developed a romantic relationship with Garcia's 13-year-old daughter, K.M.D.M. They discussed marriage and in January 2014 had sex.

---

[1] Olivarez-Aguilar explains in his appellate brief that he does not hyphenate his name. Br. of Appellant at 1, n.1. We use his name as it appears in our record.

On February 28, 2014, Olivarez-Aguilar picked K.M.D.M. up from school without permission and they took a bus to California. K.M.D.M. left a note for her mother asking her not to search for them. She provided no contact information and did not disclose where they were going. On the same day, Garcia reported to the police that K.M.D.M. was missing.

At 12:30 am on March 7, 2014, United States Marshal David Dominguez and local police arrived at the house of Olivarez-Aguilar's cousin where Olivarez-Aguilar and K.M.D.M. were staying. When they entered the home, Olivarez-Aguilar and K.M.D.M. were lying together in bed. After Dominguez announced himself, Olivarez-Aguilar emerged from a room without a shirt and immediately shut the door. The officers forced the door open and arrested Olivarez-Aguilar. While handcuffing him, K.M.D.M. emerged from the bedroom and pleaded with the officers not to hurt him.

The State's amended information charged Olivarez-Aguilar with second degree kidnapping with sexual motivation, second degree child rape, and third degree child rape.

At trial, K.M.D.M., now 14, testified about her relationship with Olivarez-Aguilar. K.M.D.M. claimed equal responsibility for the relationship, stating that it began after both "started to treat each other [differently]." Report of Proceedings (RP) (July 10, 2014) at 10.

During her testimony, K.M.D.M. expressed discomfort. For instance, K.M.D.M. stated that she and Olivarez-Aguilar had "sex," but that she did not "know how to explain it." RP (July 10, 2014) at 25. When asked whether she knew the meaning of the words "penis" and "vagina," she stated that Olivarez-Aguilar "put his penis in my

vagina." RP (July 10, 2014) at 25-26. She testified that they had sex about four times while in California. When asked what she meant by comments such as "he treated me well" and "he talked to me nicely," K.M.D.M. said she did not know how to explain what she meant. RP (July 10, 2014) at 29-30.

After K.M.D.M. testified, the trial court thanked and excused K.M.D.M., stating, "[t]hank you very much for you to be here. I know it was hard for you. Okay. Thank you. You are free to leave." RP (July 10, 2014) at 63.

The jury convicted Olivarez-Aguilar of second degree kidnapping with sexual motivation and third degree rape of a child. It found him not guilty of second degree rape of a child.

Olivarez-Aguilar appeals.

## ANALYSIS

Olivarez-Aguilar argues that the trial court's remark to K.M.D.M. at the close of her testimony constituted a judicial comment on the evidence. We disagree.

Under article IV, section 16 of the Washington Constitution, a judge is prohibited from conveying to the jury his or her personal opinion about the merits of the case or from instructing the jury that a fact at issue has been established. State v. Hartzell, 156 Wn. App. 918, 938, 237 P.3d 928 (2010).

A comment on the evidence occurs only if the court's attitude toward the merits of the case or the court's evaluation relative to a disputed issue is inferable from the statement. State v. Hansen, 46 Wn. App. 292, 300, 730 P.2d 706 (1986). "A judge need not expressly convey his or her personal feelings on an element of the offense; it is sufficient if they are merely implied." State v. Jackman, 156 Wn.2d 736, 744, 132

P.3d 136 (2006). Generally, "the touchstone of error in a trial court's comment on the evidence is whether the feeling of the trial court as to the truth value of the testimony of a witness has been communicated to the jury." State v. Brush, 183 Wn.2d 550, 565-66, 353 P.3d 213 (2015). Because the constitution prohibits judicial comments on the evidence, a claimed error based upon such a comment involves a manifest constitutional error Olivarez-Aguilar may raise for the first time on appeal. State v. Levy, 156 Wn.2d 709, 719-20, 132 P.3d 1076 (2006).

Olivarez-Aguilar claims the trial court's comment:

[I]implied that everything K.M.D.M. had described in her testimony, and which incriminated Olivarez, had been accurate. The trial court confirmed for jurors that K.M.D.M. had to overcome difficulty to testify against Olivarez, which in turn expressed to jurors that the court felt K.M.D.M. was telling the truth about what had happened between her and Olivarez.

Br. of Appellant at 7. Olivarez-Aguilar further claims the comment "aligned the trial court on the side of victims and against defendants" and that "[i]n hearing the judge's expression of sympathy for K.M.D.M., the jurors surely would have felt compelled to join it." Br. of Appellant at 8. We are unpersuaded.

The record, viewed in context, demonstrates K.M.D.M.'s youth and discomfort while testifying prompted the court's remark acknowledging the witness's discomfort. The jury listened and observed this child witness testify about intimate adult sexual activities. The record demonstrates her reluctance and awkwardness in describing her sexual relationship to the jury in frank anatomical terms. The court's remark neither implied or expressed an opinion on the evidence or K.M.D.M.'s credibility.

Even assuming a judicial comment on the evidence, the record demonstrates it was harmless. The court twice instructed the jury—both at the beginning and end of

trial—to disregard any statement by the court appearing to indicate a personal opinion on the evidence. The court instructed:

> Our state constitution prohibits a trial judge from making a comment on the evidence. It would be improper for me to express, by words or conduct, my personal opinion about the value of testimony or other evidence. I have not intentionally done this. If it appeared to you that I have indicated my personal opinion in any way, either during trial or in giving these instructions, you must disregard this entirely.

Clerk's Papers (CP) at 46.

We presume the jury followed these instructions. State v. Emery, 174 Wn.2d 741, 754, 278 P.3d 653 (2012).

Olivarez-Aguilar did not substantially challenge K.M.D.M.'s credibility at trial. On cross-examination, he focused on eliciting details about K.M.D.M.'s rocky relationship with her family, the note she left for her mother, leaving voluntarily to go with Olivarez-Aguilar, and her sister's departure from home at a young age to live with an older man. In closing argument, Olivarez-Aguilar argued that K.M.D.M.'s departure was voluntary and that merely sharing a bed did not establish the two had sex. Olivarez-Aguilar also emphasized the lack of medical and scientific corroboration, the State's heavy burden of proving the crimes beyond a reasonable doubt, and the absence of evidence to support the "restrain" element for the kidnapping charge.

The lack of serious dispute surrounding K.M.D.M.'s credibility and the court's instructions to disregard any unintended judicial comments on the evidence were sufficient to render any error harmless. See State v. Elmore, 139 Wn.2d 250, 276, 985 P.2d 289 (1999) (any comment on the evidence was cured by the court's instructions to disregard); State v. Levy, 156 Wn.2d 709, 726-27, 132 P.3d 1076 (2006) (the State has

burden of showing defendant was not prejudiced unless the record affirmatively shows no prejudice could have resulted). The error, if any, was harmless.

## CONCLUSION

For the reasons discussed, the trial court's remarks do not constitute a judicial comment on the evidence. Even assuming trial court error, the error was harmless.

WE CONCUR: