# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 52409-1-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| SETH JOHN WILCOX, | |
| Appellant. | |

MAXA, C.J. – Seth Wilcox appeals his convictions of two counts of first degree child rape and three counts of first degree child molestation and his sentence. The victim of these offenses was OW, Wilcox's oldest daughter.

We hold that the trial court did not abuse its discretion in (1) allowing expert testimony on behavioral changes in abused children, and (2) not allowing Wilcox to present evidence that OW's mother was living with a registered sex offender. We also reject Wilcox's assertions in his statement of additional grounds (SAG). However, we hold, as the State concedes, that the trial court's jury instructions on two sentencing aggravators included an improper comment on the evidence.

Therefore, we affirm Wilcox's convictions, but we remand for the trial court to impanel a jury, if requested, to consider evidence regarding the aggravating factors or to resentence Wilcox

within the standard range. We also remand for the trial court to correct a scrivener's error in the judgment and sentence.

FACTS

Wilcox and Jamie Barnard had four children during their 17-year relationship including OW, the oldest daughter. That relationship ended, and in 2013 Wilcox was living with Cynthia Reynolds. The four children lived with Wilcox and Reynolds until December 2014.

In December 2014, Wilcox and Barnard's children went to live with Barnard. Six months later, Barnard moved with the children to South Dakota. Reynolds and Wilcox ended their relationship in 2015.

In May 2017, Reynolds and OW started communicating online. OW revealed to Reynolds that Wilcox had sexually abused her in early 2014 when she was 11 years old. Reynolds contacted law enforcement, who then contacted Barnard. Barnard confirmed with OW that Wilcox had abused her.

The State charged Wilcox with two counts of first degree child rape and three counts of first degree child molestation and it provided notice of its intent to seek an exceptional sentence.

Before trial, Wilcox asked to admit evidence that Barnard was living in South Dakota with a registered sex offender, arguing that it would show that she understood the consequences of sex offender registration and that Wilcox's conviction would all but ensure that she would get exclusive custody of the children. The trial court did not allow the specific cross-examination Wilcox requested, but the court allowed Wilcox to ask Barnard if she understood sex offender registration requirements.

At trial, OW testified to five different instances when Wilcox sexually abused her. Reynolds testified that when the children were living with her, she noticed that OW began

layering her clothing, acting out, and quit doing artwork, which had been her passion. In addition, she testified that Wilcox gave OW the same type of perfume that Reynolds used. Barnard also testified about OW layering her clothing, having emotional outbursts, and getting gifts from Wilcox.

The State called as an expert witness Kristen Mendez, a forensic interviewer with extensive experience with children who had been sexually abused. Wilcox objected because Mendez had not interviewed OW. The trial court allowed Mendez to testify. Mendez admitted that she did not interview OW. But she offered general testimony about behavioral changes in children suffering from abuse. She explained layering, gifting, behavioral changes, and reasons for delayed disclosure.

Wilcox testified that the allegations were not true, that he never had abused OW, and that he was upset when Barnard took the children out of state without his knowledge or permission.

The trial court instructed the jury that if they found Wilcox guilty, they were to determine two aggravating circumstances: if the crime was part of an ongoing pattern of sexual abuse and/or if the crime was an aggravated domestic violence offense. The court instructed the jury that "An 'ongoing pattern of sexual abuse' means multiple incidents of abuse over a prolonged period of time. The term 'prolonged period of time' means more than a few weeks." Clerk's Papers at 162. The same definition was included in the aggravated domestic violence instruction.

The jury found Wilcox guilty of all five charged counts, and found that both aggravating circumstances existed. Based on the aggravating factors, the trial court imposed an exceptional sentence. Wilcox appeals his convictions and sentence.

ANALYSIS

A.     EXPERT TESTIMONY REGARDING BEHAVIORAL EFFECTS ON SEXUAL ABUSE VICTIMS

Wilcox argues that the trial court abused its discretion when it allowed Mendez to provide general testimony about behavioral changes in sexually abused children.  He claims that because Mendez never interviewed OW, she had no ability to evaluate OW as a potential sex abuse victim.  We disagree.

1.     Legal Principles

ER 702 provides that "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."  Testimony should be admitted under ER 702 when (1) the witness is qualified as an expert, (2) the expert's opinion is based on a theory generally accepted by the scientific community, and (3) the expert's testimony is helpful to the trier of fact.  *State v. Rafay*, 168 Wn. App. 734, 784, 285 P.3d 83 (2012).  Testimony is helpful when it concerns issues outside common knowledge of laypersons and is not otherwise misleading.  *See id.*

We review for abuse of discretion a trial court's decision regarding the admission of expert testimony under ER 702.  *State v. Green*, 182 Wn. App. 133, 146, 328 P.3d 988 (2014).  An abuse of discretion occurs in this context when no reasonable person would adopt the trial court's ruling.  *State v. Atsbeha,* 142 Wn.2d 904, 913-14, 16 P.3d 626 (2001).

2.     Analysis

Wilcox relies on *State v. Richmond*, 3 Wn. App. 2d 423, 415 P.3d 1208 (2018), to argue that Mendez's testimony was too attenuated to be helpful to the jury.  In *Richmond*, the trial court excluded expert testimony regarding the effects of methamphetamine use on an assault

victim to support the defendant's claim of victim aggression. *Id.* at 431-32. The appellate court held that the trial court did not abuse its discretion because the defendant had failed to show that the proposed testimony would be potentially helpful to the jury. *Id.* at 431. The court reasoned that the expert had never met nor examined the victim, had no basis to assess how the victim's body may have processed methamphetamine, and increased aggression is only one of the possible wide-ranging effects of methamphetamine use. *Id.* The court relied on this court's decision in *State v. Lewis*, 141 Wn. App. 367, 388-89, 166 P.3d 786 (2007), which similarly found no abuse of discretion in excluding expert testimony on methamphetamine's effects.

Unlike these methamphetamine cases, courts have allowed general expert testimony about the effects on the victim in child sexual assault cases. In *State v. Stevens*, the court noted that Washington cases "have made clear that expert testimony generally describing symptoms exhibited by victims may be admissible when relevant and when not offered as a direct assessment of the credibility of the victim." 58 Wn. App. 478, 496, 794 P.2d 38 (1990); *see also* *State v. Cleveland*, 58 Wn. App. 634, 646-47, 794 P.2d 546 (1990) (expert testimony about the general characteristics of child sex abuse victims properly admitted).

Here, Mendez's testimony explained generally some of the behavioral changes in sexual abuse victims, delayed reporting, and the effects of gifting. As in *Stevens*, Mendez did not testify that OW fit any profile of abuse nor did she rely on any unusual technique or theory as a basis for her testimony. "She only testified generally as to behaviors consistent in sexually abused children that she had observed in her own experience working in the field." *Stevens*, 58 Wn. App. at 497.

Mendez's testimony may have helped the jury in understanding the evidence about behavior changes, gifting, and delayed reporting. Therefore, we hold that the trial court did not abuse its discretion in allowing Mendez to testify.

B. EVIDENCE REGARDING SEX OFFENDER

Wilcox argues that the trial court violated his constitutional right to present a defense when it excluded evidence that Barnard lived with a registered sex offender. He claims that this restriction prevented him from showing that Barnard had a motive to lie in that if he were convicted, she would have unfettered custody of their children. We disagree.

1.   Legal Principles

A criminal defendant has a constitutional right to present a defense. *State v. Jones*, 168 Wn.2d 713, 719-20, 230 P.3d 576 (2010). This right to present a defense derives from the Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution. *State v. Wade*, 186 Wn. App. 749, 763-64, 346 P.3d 838 (2015). There also is a fundamental due process right to present a defense under the Fourteenth Amendment. *State v. Lizarraga*, 191 Wn. App. 530, 551-52, 364 P.3d 810 (2015).

However, a defendant has no constitutional right to present evidence that is inadmissible under standard evidence rules. *Wade*, 186 Wn. App. at 764. Pertinent here, "[d]efendants have a right to present only relevant evidence, with no constitutional right to present *irrelevant* evidence." *Jones*, 168 Wn.2d at 720. Therefore, a defendant's evidence must at least have minimal relevance to implicate the right to present a defense. *Id.*

In evaluating whether the exclusion of evidence violates the defendant's constitutional right to present a defense, "the State's interest in excluding evidence must be balanced against

the defendant's need for the information sought to be admitted." *State v. Arndt*, 194 Wn.2d 784, 812, 453 P.3d 696 (2019).

We review the trial court's exclusion of evidence for an abuse of discretion. *Id.* at 797. We review de novo whether an evidentiary ruling violated the defendant's right to present a defense. *Id.*

2.   Analysis

The trial court reasoned that the evidence that Barnard was living with a registered sex offender was irrelevant and tangential. But the court allowed Wilcox to ask Bernard if she was familiar with the sex offender registration requirements. The court also allowed Wilcox to testify that he was worried that the children might be sexually molested if they stayed with Barnard and her boyfriend.

During cross-examination, Wilcox asked Barnard if her legal situation regarding the children would be better if Wilcox were convicted of the current charges. She responded, "I guess." Report of Proceedings (RP) at 246. He then asked if she was familiar with sex offender registration requirements and what it does to a person. She responded, "Not really." RP at 246. He then asked her, "Don't you know the requirements of a sex offender registry through your boyfriend?" The trial court sustained the State's objection, reasoning that there may be some probative value but the prejudice outweighed it.

We find no abuse of discretion here. We also find no constitutional violation. The trial court found that the requested cross-examination had minimal relevance. Further, the court stated that evidence of a sex registration requirement would be highly prejudicial even though it was only tangential to the case. Finally, the trial court minimized any prejudice by allowing

Wilcox to ask if she was familiar with sex registration requirements. Accordingly, we hold that the trial court did not violate Wilcox's right to present a defense.

C.     COMMENT ON THE EVIDENCE IN EXCEPTIONAL SENTENCE INSTRUCTIONS

Article IV, section 16 of the Washington Constitution states that judges shall not "charge juries with respect to matters of fact, nor comment thereon." Wilcox argues, and the State concedes, that the instructions defining a prolonged period of time as used in the special verdict instructions constituted an improper comment on the evidence. We agree.

RCW 9.94A.535(3)[1] contains a list of aggravating factors that can allow a trial court to impose an exceptional sentence. One aggravating factor is: "The offense was part of an ongoing pattern of sexual abuse of the same victim under the age of eighteen years manifested by multiple incidents over a *prolonged period of time*." RCW 9.94A.535(3)(g) (emphasis added). Another aggravating factor is: "The offense was part of an ongoing pattern of psychological, physical, or sexual abuse of a victim or multiple victims manifested by multiple incidents over a *prolonged period of time*." RCW 9.94A.535(3)(h)(i) (emphasis added).

In *State v. Brush*, the court held that an instruction that a prolonged period of time means more than a few weeks was in improper comment on the evidence. 183 Wn.2d 550, 556-57, 353 P.3d 213 (2015). As the court noted, judicial comments on the evidence are presumed to be prejudicial and the State has the burden of showing that the defendant was not prejudiced. *Id.* at 559. The remedy for an instruction that improperly defines a prolonged period of time is

---

[1] RCW 9.94A.535 has been amended since the events giving rise to this case transpired. Because those amendments do not materially affect the statutory language relied on by this court, we cite to the current version of the statute.

reversal of the exceptional sentence and remand for the trial court, if requested, to impanel a jury to consider evidence regarding the aggravating factors. *Id.* at 561

Here, the evidence showed that Wilcox's offenses occurred during a one-month period. The State concedes that had the court not defined a "prolonged period of time," the jury may not have found the aggravating sentencing factors. Therefore, we reverse Wilcox's exceptional sentence and remand for the trial court to impanel a jury, if requested, to consider evidence regarding the aggravating factors or to resentence Wilcox within the standard range.

D.      SAG CLAIMS

1.      Jury Selection

Wilcox asserts that his jury was selected without a judge overseeing the voir dire process and that his jury consisted of 12 biased jurors. The record shows that the trial court was present during the jury selection process. And Wilcox presents no evidence of juror bias. Therefore, we reject Wilcox's assertion.

2.      Timeline

Wilcox asserts that the timeline presented in his case was never clearly established and thereby denied him his right to defend himself. The amended information and the trial court's instructions to the jury required the State to prove that the offenses occurred between December 1, 2013 and December 1, 2014. This was consistent with OW's testimony and with Reynolds's testimony. We reject this assertion.

Wilcox is correct that his judgment and sentence has the wrong dates but that does not invalidate his convictions. Instead, on remand the trial court should correct the scrivener's error on the judgment and sentence.

CONCLUSION

We affirm Wilcox's convictions. But we remand for the trial court to impanel a jury, if requested, to consider evidence regarding the aggravating factors or to resentence Wilcox within the standard range and to correct a scrivener's error in the judgment and sentence.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

MAXA, C.J.

We concur:

MELNICK, J.

SUTTON, J.